UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

SUZANNE PARKER,                    )
                                   )
                Plaintiff,         )
                                   )
        v.                         )        No. 1:19-cv-04796-JRS-MG
                                   )
BROOKS LIFE SCIENCE, INC,          )
                                   )
                Defendant.         )

## Order on Motion for Summary Judgment

Suzanne Parker lost her job on October 11, 2018.  Believing she was terminated due to her disability and race, she sued her former employer Brooks Life Science, Inc. ("Brooks"), alleging race discrimination under the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. § 1981, and disability discrimination and retaliation under the Americans with Disabilities Act ("ADA").  Brooks moves for summary judgment. (ECF No. 42.)  For the following reasons, Brooks's motion is granted.

## I.    Background

Parker is an African American woman who has suffered from multiple sclerosis since 1998.  (Parker Dep. ¶¶ 36:6–24, ECF 43-1 at 26; Compl. ¶ 3, ECF No. 1 at 1.) She was diagnosed with sciatica in 2017.  (Parker Dep. ¶¶ 36:6–24, ECF No 43-1 at 26.)  Parker began working at Brooks's Indianapolis, Indiana, facility in January 2017 as a temporary employee.  (Parker Dep. ¶¶ 18:16–18, ECF 43-1 at 10; *see also* ECF No. 47-17.)  On June 23, 2017, Brooks hired Parker as a part-time receptionist and administrative assistant.  (ECF 43-1 at 61–62.)  Throughout her employment with

Brooks, Parker used a scooter and a walker to help her mobility. (Parker Dep. ¶¶ 40:5–10, ECF 43-1 at 30.) Parker's medical conditions did not impact her ability to perform her job. (*Id.* at ¶¶ 37:22–38:5, ECF 43-1 at 27–28.) Parker worked the morning shift and another part-time receptionist and administrative assistant, Pamela Johnson-Baird, worked the afternoon shift. (*Id.* at ¶¶ 50:14–18, ECF No. 43-1 at 40.)

In July 2017, Parker requested to have a key to the front door, which was closer to her desk. (Parker Aff. ¶ 13, ECF No. 47-3; ECF No. 47-13 at 3.) Tom Waites, Director of Resource Management, denied Parker's request on July 13, 2017. (ECF No. 47-13 at 1–2.) On July 14, 2017, Parker acknowledged that her request was denied. (ECF No. 47-13 at 1.)

Gillian Williams became the Office Manager on March 5, 2018. (Williams Aff. ¶ 2, ECF 43-3 at 1.) She managed the front desk and supervised Parker and Johnson-Baird. (Williams Dep. ¶¶ 11:25–12:3, ECF 43-2 at 12–13.) On May 4, 2018, Williams, and Human Resources employees Ami Hall and Asia Bartee met with Parker. (*Id.* at ¶¶ 19:5–18, ECF 43-2 at 20.) During the meeting, Williams issued a "verbal corrective action" concerning her expectations that Parker follow the PTO policy, (Williams Dep., ECF No. 43-2 at 49-50; Parker Aff. ¶¶ 16–17, ECF No. 47-3 at 3), followed by an e-mail reiterating those expectations, including, *inter alia*, Parker "[r]equesting time off with notice, putting in PTO time for missed hours," (Williams Dep., ECF No. 43-2 at 50; Parker Dep., Ex. 15, ECF No. 43-1 at 65). Williams stated that Parker continued to violate this PTO policy even after the meeting. (Williams

Dep. ¶¶ 22–25, ECF No. 43-2 at 50.)  Also during this meeting, and memorialized in the same e-mail, Parker requested badge access to the front door of the facility and for Brooks to construct additional handicap ramps.  (Parker Dep., Ex.15, ECF 43-1 at 65.)  Bartee told Parker that she could schedule a separate meeting with her to discuss Parker's requests.   (Williams Dep. ¶¶ 20:7–11, ECF No. 43-2 at 21.) Following the meeting, Williams spoke to Waites about Parker's request for handicap access ramps.  (Williams Aff. ¶ 4, ECF 43-3 at 1–2.)  In a follow-up email to Parker after the meeting that day, Williams informed Parker that "she was able to confirm with facilities that a handicap ramp with a single door entry ha[d] been provided with handicap parking right outside the door."  (ECF No. 43-1 at 65; *see also* Williams Dep. ¶¶ 11–18, ECF No. 43-2 at 21.)  Williams received no follow-up communication from Parker regarding the access badge or request to build handicap ramps.  (Williams Aff. ¶ 4, ECF 43-3 at 1–2.)

Williams worked in Arizona during the first week of October 2018.  (Williams Dep. ¶¶ 4–6, ECF 43-2 at 44.)  She returned to the Indianapolis facility on October 8, 2018.  (Williams Aff. ¶ 6, ECF No. 43-3 at 2.)  That day, Parker requested to leave work thirty minutes early to attend a dry-needling appointment because she was in pain.  (Parker Dep. ¶¶ 66:1–11, ECF No. 43-1 at 50; ECF No. 43-2 at 60.)  Parker also requested to leave work early the next day, October 9.  (ECF No. 43-2 at 60.)  She told Williams that Johnson-Baird had agreed to cover for her.  (*Id.*)  Williams approved both requests and told Parker to put in "PTO for both of those" requests.  (*Id.*)

3

On October 8, 2018, Williams received reports from several employees indicating that while Williams was in Arizona, Parker had altered her schedule, not worked her scheduled hours, and arranged for other employees to cover her absences.  (Williams Aff. ¶ 6, ECF No. 43-3 at 2.)  On October 10, 2018, Williams and Parker met to discuss the reports.  (*Id.* ¶ 7.)  Williams informed Parker that taking time off and altering her schedule while Williams was in Arizona meant that Parker had failed to follow Brooks's PTO policy.  (*Id.*)  During the meeting, Williams understood Parker to have admitted violating Brooks's PTO policy while Williams worked in Arizona.  (Williams Aff. ¶ 7, ECF No. 43-3 at 2.)

After the meeting with Parker, Williams emailed Bartee and Heidi Kelley, Senior Human Resources Director.  (ECF 43-2 at 55.)  Williams informed Bartee and Kelley of the reports she had received from several employees about Parker's actions while Williams was in Arizona.  (*Id.*)  She also relayed that she met with Parker to discuss those reports and let Parker know that she was "not following the procedures for requesting time off, she [was] not following the set schedule, and she [was] altering her time without notifying [Williams]."  (*Id.*)  Williams recommended termination of Parker's employment.  (*Id.*)  The email from Williams to Bartee and Kelley stated, in relevant part:

> My recommendation is termination.  Not only have I discussed this with [Parker] multiple times, but included HR.  She will not follow policy and is not meeting the expectations clearly laid out for her.  I have tried to coach her through this, I have tried to reinforce the expectations, and I spend more time managing [Parker] that I think is beneficial to the company.

(*Id.*)  Bartee responded to Williams's email stating:

4

> [Kelley,] I've been involved in these conversations with [Parker] and
> [Williams].  Ami as well.  [Parker] not only disregarded policy, ignored
> what her supervisor instructed her to do, but did all of this while her
> supervisor was not physically here.  I support termination at this time
> as well, however wanted to get your eyes on it if you had any concerns
> about it.

(*Id.* at 54.)  The next day, October 11, Williams responded:

> [Kelley,] [Parker] will be off the next 7 days.  If you do not approve the
> termination, [Bartee] suggested that we do a final warning—either way,
> I would like to take action today since [Parker] will be out after today.

(*Id.*)  Soon after, Kelley responded:

> I am fine with the term.  Please just make sure documentation is
> accurate/complete.

(*Id.*)

After receiving approval from Kelley on October 11, 2018, Williams told Parker
that she was terminated.  (*Id.*; *see also* Parker Aff. ¶ 32, ECF No. 47-3 at 5.)  Williams
did not give Parker a reason for her termination.  (Parker Aff. ¶ 7, ECF No. 47-22 at
1.)

On December 19, 2018, Parker filed a charge of discrimination with the EEOC.
(ECF No. 47-17.)  The EEOC dismissed Parker's charge on September 9, 2019.  (ECF
43-2 at 64.)  Parker "received a notice of right to sue on September 12, 2019." (Compl.
¶ 2, ECF No. 1 at 1.)  On December 4, 2019, Parker brought the instant action against
Brooks.  (ECF No. 1).

Further facts will be discussed below as necessary.

## II.    Legal Standard

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The movant bears the initial burden of production. *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013).  That initial burden consists of either "(1) showing that there is an absence of evidence supporting an essential element of the non-moving party's claim; or (2) presenting affirmative evidence that negates an essential element of the non-moving party's claim." *Hummel v. St. Joseph Cnty. Bd. of Comm'rs*, 817 F.3d 1010, 1016 (7th Cir. 2016) (citing *Modrowski*, 712 F.3d at 1169).  If the movant discharges its initial burden, the burden shifts to the non-moving party, who must present evidence sufficient to establish a genuine issue of material fact on all essential elements of his case.  *See Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 702 (7th Cir. 2009).  The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor.  *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018).  But the Court must also view the evidence "through the prism of the substantive evidentiary burden." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).

## III.    Discussion

Parker brings four claims against Brooks: (1) wrongful termination based on race under § 1981 (Count I); (2) wrongful termination based on race under Title VII (Count II); (3) wrongful termination based on disability under the ADA (Count III); and (4)

retaliatory termination based on disability under the ADA (Count IV).  Parker also asserts that she alleged a *fifth* claim for failure to accommodate under the ADA, even though her Complaint does not squarely allege that claim as a count.

For the following reasons, Brooks's Motion for Summary Judgment is granted as to Counts I, II, III, and IV.  Furthermore, the Court finds that Parker does bring a failure-to-accommodate claim under the ADA, but that Brooks's Motion for Summary Judgment is granted as to that claim as well.

### A.  Title VII Race Discrimination

Brooks argues that Parker's race-discrimination claim fails as a matter of law under Title VII because Parker did not exhaust her administrative remedies.  Parker failed to respond and has therefore waived any argument as to this claim.  *See Bonte v. U.S. Bank N.A.*, 624 F.3d 461, 466 (7th Cir. 2010).  Any response from Parker would have been futile, however, because Parker failed to exhaust her administrative remedies as to the Title VII race-discrimination claim, and the 300-day time limit for filing any such charge with the EEOC has long since passed, making exhaustion an impossibility.  *See Riley v. Elkhart Cmty. Sch.*, 829 F.3d 886, 891 (7th Cir. 2016) (citing 42 U.S.C. § 2000e-5(e)(1) (Title VII statute of limitations)).

Although Parker has waived or conceded any argument that she did exhaust her administrative remedies on her Title VII claim, which is enough to defeat such claim, the record independently establishes that she did not exhaust.  "Before bringing a Title VII claim, a plaintiff must first exhaust h[er] administrative remedies by filing charges with the EEOC and receiving a right to sue letter."  *Chaidez v. Ford Motor*

*Co.*, 937 F.3d 998, 1004 (7th Cir. 2019) (citing *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992)).  A plaintiff may then "bring only those claims that were included in her EEOC charge, or that are 'like or reasonably related to the allegations of the charge and growing out of such allegations.'"  *Id.* (quoting *Geldon v. S. Milwaukee Sch. Dist.*, 414 F.3d 817, 819 (7th Cir. 2005)).  "Claims are like or reasonably related when (1) there is a reasonable relationship between the allegations in the charge and the claims in the complaint and (2) the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge."  *Id.* (quoting *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994) (cleaned up)).

The Court must carefully examine and compare Parker's Complaint and the EEOC charges to determine whether the complaint and the EEOC charges contain claims that are "like or reasonably related to" each other.  In her EEOC charge, Parker checked the form's "Retaliation" and "Disability" boxes.  (ECF No. 47-17.) Furthermore, she alleges in the charge that she requested and was denied reasonable accommodations for her disability.  (*Id.*)  She also alleges that she was terminated for having requested reasonable accommodations.  (*Id.* ("I believe I have been discriminated against and retaliated against in violation of the Americans with Disabilities Act, as amended.").)  Notably, the charge contains no mention of Parker's race nor does it contain any mention of Title VII.  Parker also failed to check the "Race" box on the form.  Even the most liberal reading of the EEOC charge's factual narrative does not raise a claim of race discrimination.

Parker's Complaint alleges facts that closely mirror those facts alleged in the EEOC charge regarding Parker's claims of disability discrimination and retaliation under the ADA. (Compl. ¶¶ 5–18, 20, ECF No. 1 at 2.) As to her race-discrimination claims, the Complaint alleges: (1) that Parker is an "African American female"; (2) that she was replaced by a "non-disabled Caucasian woman"; and (3) that she "was terminated due to her race." (*Id.* ¶¶ 3, 16, 19, 21–22, ECF No. 1 at 1, 2, 3.) These three allegations are unsupported by any additional factual allegations that would connect or reasonably relate her race-discrimination claim to the factual allegations in support of her claims of disability discrimination. *Cf. Miller v. Am. Airlines, Inc.*, 525 F.3d 520, 526 (7th Cir. 2008) (plaintiff cannot bring a new claim that is "inconsistent with" the claim in his EEOC charge, even if the new claim "involves the same parties and the same facts as the other claim"). In any event, neither is there a reasonable relationship between the allegations in her EEOC charge and the claims in her Complaint, nor would a race-discrimination claim reasonably be expected to grow out of an EEOC investigation into the disability discrimination, retaliation, and failure to accommodate allegations found in her EEOC charge.

Thus, the Court finds that Parker's race discrimination claim under Title VII is not "like or reasonably related" to any of the allegations in Parker's EEOC charge, which related to disability discrimination, nor could such race-discrimination claim be reasonably expected to grow out of an investigation into the allegations in her EEOC charge. *See Watson v. Madison Cnty. Sheriff's Dep't*, No. 1:12-cv-1777, 2013 WL 3154125, at *3 (S.D. Ind. June 20, 2013) (plaintiff's claims of discrimination based

on religion, race, age, and gender were dismissed because they were not "'like or reasonably related' to the disability discrimination claims [plaintiff] raise[d], nor could such charges be reasonably expected to grow out of an investigation into disability discrimination charges"); *see also Tyson v. Gannett Co.*, 538 F.3d 781, 783 (7th Cir. 2008) (plaintiff filed a claim of disability discrimination but there was no evidence that she filed charge of discrimination on the basis of race and she failed to present any evidence disclosing whether she had, which resulted in summary judgment being granted on her Title VII claim because she failed to comply with the EEOC requirement).  Thus, Brooks's Motion for Summary Judgment is **granted** as to Count II.

### B. *Race Discrimination under § 1981, Disability Discrimination, and Retaliation*

Brooks contends that there is no evidence showing that Brooks terminated Parker's employment because of her race or disability.  The Court finds that because no reasonable jury could conclude that Parker was terminated or retaliated against because of her race, disability, or protected activity, her claims in Counts I, III, and IV fail as a matter of law.

"A claim for disparate treatment based on disability under the ADA . . . requires proof [that] (1) plaintiff was disabled; (2) plaintiff was qualified to perform essential functions with or without reasonable accommodation; and (3) disability was the 'but for' cause of adverse employment action."  *Scheidler v. Indiana*, 914 F.3d 535, 541 (7th Cir. 2019).  "Retaliation claims under the . . . ADA require three familiar elements: (1) the employee engaged in statutorily protected activity; (2) the employer

10

took adverse action against the employee; and (3) the protected activity caused the adverse action." *Freelain v. Vill. of Oak Park*, 888 F.3d 895, 900 (7th Cir. 2018). In order to prove a violation of either Title VII or § 1981, a plaintiff has to show: "(1) [s]he was a member of a protected class; (2) [s]he was meeting [her] employer's legitimate expectations; (3) [s]he suffered an adverse employment action; and (4) other similarly situated employees who were not members of [her] protected class were treated more favorably." *Wells v. Unisource Worldwide, Inc.*, 289 F.3d 1001, 1006 (7th Cir. 2002) (citing *Paluck v. Gooding Rubber Co.*, 221 F.3d 1003, 1012 (7th Cir. 2000)). In deciding whether there is a genuine issue of material fact as to whether a plaintiff's race or disability or protected activity caused her termination, the Court "consider[s] the evidence as a whole and ask[s] whether a reasonable jury could draw an inference of retaliation" or discrimination. *King v. Ford Motor Co.*, 872 F.3d 833, 841–42 (7th Cir. 2017) (citing *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 764–66 (7th Cir. 2016)); *see also Edson v. Dreyer & Reinbold Inc.*, No. 1:15-cv-00861-TWP-MJD, 2016 WL 11269418, at *3–4 (S.D. Ind. Dec. 13, 2016) (applying *Ortiz* "evidence as a whole" standard to retaliation and discrimination claims under the ADA).

As an initial proposition, Parker has failed to even make out a *prima facie* case of racial discrimination under the indirect method in that she did not identify a comparator similarly situated in all material respects. *Coleman v. Donahoe*, 677 F.3d 835, 841, 846 (7th Cir. 2012). Rather, she identifies Carrie Lauman, who was not even a Brooks employee. Thus, the PTO policy that Parker violated did not apply to

11

Lauman.  (ECF No. 47-6 ("This policy applies to *all* U.S. Brooks Automation Inc. Hourly *employees*) (emphasis added).)   Parker has provided no evidence to the contrary.  Moreover, no evidence has been adduced that Lauman ever violated the policy.  Finally, Parker's contention that Brooks treated Lauman more favorably by hiring her to replace Parker is contradicted by the evidence, (Williams Dep. ¶ 49:15, ECF No. 43-1 at 39 (testifying that Lauman worked for "Aerotek" an "on-site temporary service," meaning she did not work for Brooks).  *See Coleman*, 677 F.3d at 847–48 (in cases involving disparate discipline "the real question is whether [potential comparators] were *treated more favorably* by the same *decisionmaker*") (emphasis in original) (cleaned up).  Still, assuming *arguendo* that Lauman was a proper comparator, Parker's racial-discrimination claim fails for causation. Similarly, the first two elements required to make out a case for each of disability discrimination and retaliation respectively not being in dispute, summary judgment comes down to causation.

Thus, in each of her employment discrimination claims here, "'the sole question that matters is causation: whether a statutorily proscribed factor caused [the adverse employment action]." *Joll v. Valparaiso Cmty. Sch.*, 953 F.3d 923, 929 (7th Cir. 2020) (quoting *Ortiz*, 834 F.3d at 764–65); *see also Comcast Corp. v. Nat'l Assoc. of African American-Owned Media*, 140 S. Ct. 1009, 1019 (2020) (to prevail on a race-discrimination claim under § 1981, "a plaintiff must . . . ultimately prove that, but for race, it would not have suffered the loss of a legally protected right"); *Serwatka v. Rockwell Automation, Inc.*, 591 F.3d 957, 962 (7th Cir. 2010) ("[T]he ADA renders

employers liable for employment decisions made because of a person's disability, . . . [which] require[s] a showing of but-for causation."). Direct evidence may support an inference of causation. *See Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994). But because Parker does not point to any direct evidence in this case, she must show that discrimination or retaliation was the but-for cause of an adverse employment action by pointing to circumstantial evidence. *See Joll*, 953 F.3d at 929. Such evidence includes: "(1) suspicious timing; (2) ambiguous statements or behavior towards other employees in the protected group; (3) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically receive[d] better treatment; and (4) evidence that the employer offered a pretextual reason for an adverse employment action." *Rowlands v. United Parcel Serv. - Fort Wayne*, 901 F.3d 792, 802 (7th Cir. 2018) (quoting *Monroe v. Ind. Dep't of Transp.*, 871 F.3d 495, 504 (7th Cir. 2017)).

Even drawing all inferences in Parker's favor, circumstantial evidence in this case supports only one conclusion—that Parker's refusal to comply with Brooks's PTO policy and to follow Williams's instructions and coaching caused Williams to terminate Parker's employment. But Parker asserts that a causal connection existed because there was (1) suspicious timing and (2) because the reason for her termination was pretextual. The Court addresses Parker's two assertions in order.

1.  <u>There is no inference of causation due to suspicious timing.</u>

Parker contends that she was fired three days after she asked for an accommodation. She argues that the three-day period between her protected activity

and the adverse action is suspicious, which she asserts is sufficient by itself to prove a causal connection.

"Suspicious timing alone rarely establishes causation, but if there is corroborating evidence that supports an inference of causation, suspicious timing may permit a plaintiff to survive summary judgment." *Sklyarsky v. Means-Knaus Partners, L.P.*, 777 F.3d 892, 898 (7th Cir. 2015) (citing *Coleman v. Donahoe*, 667 F.3d 835, 860–61 (7th Cir. 2012)). Parker points to *McClendon v. Indiana Sugars, Inc.*, 108 F.3d 789, 796–97 (7th Cir. 1997), to support her assertion. In *McClendon*, the Seventh Circuit held that "the sequence of events over the 2–3 day period between [plaintiff's] filing of his complaint and his termination ha[d] established a prima facie case of retaliation." *Id.* at 797.

The facts surrounding Parker's termination are distinguishable from those in *McClendon*. Here, on October 8, 2018, the day Williams returned to the Indianapolis location, Parker requested to leave work early on that and the next day to receive dry needling for pain relief. (Parker Dep. ¶¶ 66:1–11, ECF No. 43-1 at 50; ECF No. 43-2 at 60.) Williams approved the time off and directed Parker to record the approved time off in Workday. (ECF No. 43-2 at 60.) On October 11, 2018, Parker was terminated. (Parker Aff. ¶ 32, ECF No. 47-3 at 5.) If there were no more facts in the record, Parker would have a stronger argument that the three-day period between Parker asking for time off and her termination was suspicious, similar to the sequence of events that occurred in *McClendon*. But the facts do not end there. October 8, 2018, was also the day that several employees reported to Williams that

14

while she was in Arizona, Parker had altered her schedule, not worked her scheduled hours, and arranged for other employees to cover her absences without approval. (Williams Aff. ¶ 6, ECF No. 43-3 at 2.)  On October 10, Williams met with Parker to discuss the accusations.  (*Id.* ¶ 7.)  During that meeting, Williams informed Parker that her conduct violated Brooks's PTO policy.  (*Id.*)  During the meeting, Williams understood Parker to have admitted violating Brooks's PTO policy while Williams worked in Arizona.  (*Id.*)

After the meeting, Williams notified Bartee and Kelley by email that she recommended terminating Parker, providing as reasons for the recommendation: that Parker failed to follow company PTO policy on multiple occasions, that she took unauthorized time off while Williams was in Arizona, that she was not responsive to coaching, and that her quality of work was not up to standard.  (ECF 43-2 at 55.)

Brooks argues, given these facts, that the timing of Parker's termination was not suspicious and that she has failed to prove causation.  (ECF No. 44 at 12.)  Brooks points to *Davis v. Time Warner Cable of Southeastern Wisconsin, L.P.* to support its assertion.  651 F.3d 664 (7th Cir. 2011).  In *Davis*, the plaintiff was terminated very soon after he misprocessed a request from a customer that led to a commissionable transaction.  *Id.* at 668.  Prior to the incident that led to the plaintiff's termination, he had complained about work-place incidents that occurred regarding the sales team in which he worked.  *Id.*  The plaintiff argued that the suspicious timing between his complaint and his termination alone warranted causation, urging the *Davis* court to treat his case like other Seventh Circuit cases in which plaintiffs were fired after

handing their supervisor a written complaint or were fired without any investigation after allegedly engaging in minor infractions for which no one was generally disciplined. *Id.* at 675 (citing *Loudermilk v. Best Pallet Co., LLC*, 636 F.3d 312, 314 (7th Cir. 2011)); *see also Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 407 (7th Cir. 2007). The *Davis* court rejected the plaintiff's arguments because the plaintiff "completely ignore[d] the elephant in the room: the questionable transaction in which he engaged." *Id.* The court found that "[t]he mere fact [plaintiff's] complaints closely preceded his termination [was] not enough to make this case analogous to others in which no investigation occurred, or where the challenged supervisor (or employee about whom the complaint was made) where the only party involved." *Id.* Furthermore, the court found no causation because there was a "significant intervening event" separating plaintiff's complaints from his discharge. *Id.*

Here, although the timing between Parker asking for and receiving the time off accommodation to attend her dry needling appointments and her termination—three days—appears suspicious on the surface, the intervening event that led to her termination dispels any inference of causality here. *See Loudermilk*, 636 F.3d at 315 ("We have also cautioned that '[s]uspicious timing may be just that—suspicious,' and underscored the importance of context in assessing whether an inference of causality is warranted or not."). Like the plaintiff in *Davis*, Parker had an intervening event, several intervening events in fact, that led to her termination, which occurred only after Williams concluded that Parker conducted herself in a manner that violated company PTO policy while Williams was in Arizona. True, unlike *Davis*, Parker's

intervening event did not occur *sequentially* after she asked for time off, but it was indeed discovered by Williams on the same day she sought and received that accommodation. In short, decisionmaker Williams only learned of Parker's misconduct in the *intervening period* between when she granted Parker's requested accommodation and when she sought permission to, and ultimately terminated Parker. Even then, Williams did not fire Parker on the spot. Rather, she conducted an investigation, and only then sought approval for the termination premised on reasons consistent with the record before the Court. In contrast, employment-discrimination plaintiffs prevailing past summary judgment on bare timing evidence tend to have been fired on the spot, without investigation (a factor potentially relevant to pretext). *See Loudermilk*, 636 F.3d at 314 (plaintiff was fired immediately after handing his supervisor his complaint); *Humphries*, 474 F.3d at 407 (plaintiff swiftly discharged without investigation after lodging complaint). Here, Williams not only initially granted the accommodation, but, after being informed of the alleged policy violations, then met with Parker and went over the allegations with her to confirm their accuracy. Only then did Williams seek and gain approval from Brooks's Human Resources Director to terminate Parker. There is no reasonable inference of causation here due to suspicious timing.

   2.  <u>Brooks's reason for terminating Parker was not pretextual.</u>

  Brooks has offered a legitimate, nondiscriminatory reason for terminating Parker; namely, that Parker violated Brooks's PTO policy during Williams's absence—and even before as detailed in the May 4, 2018 meeting and follow-up e-mail concerning

Williams's expectations regarding the PTO policy—which policy Parker continued to violate during the intervening period.  To show this reason was pretextual, Parker "must present evidence suggesting that [Brooks] is dissembling." *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 635 (7th Cir. 2011).  Pretext "concerns whether the stated reason was not merely erroneous or unfair, but a lie." *King v. Ford Motor Co.*, 872 F.3d 833, 843 (7th Cir. 2017) (citing *Coleman v. Donahoe*, 667 F.3d 835, 852 (7th Cir. 2012)).  "[I]t is not the court's concern that an employer may be wrong about its employee's performance, or be too hard on its employee. Rather, the only question is whether the employer's proffered reason was pretextual, meaning that it was a lie." *Ineichen v. Ameritech*, 410 F.3d 956, 961 (7th Cir. 2005).  "To meet this burden, [Parker] must 'identify such weaknesses, implausibilities, inconsistencies, or contradictions' in [Brooks's] asserted reason 'that a reasonable person could find [it] unworthy of credence.'" *Coleman*, 667 F.3d at 852 (quoting *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 792 (7th Cir. 2007)).  Even if Brooks's reason is "foolish, trivial, or baseless," Parker "loses" if Brooks terminated Parker because it "honestly believed" its proffered reason. *Boumehdi*, 489 F.3d at 792.  However, "if the stated reason, even if actually present to the mind of the employer, wasn't what induced him to take the challenged employment action, it was a pretext." *Forrester v. Rauland–Borg Corp.*, 453 F.3d 416, 418 (7th Cir. 2006).

Citing *Johnson v. Nordstrom, Inc.*, 260 F.3d 727 (7th Cir. 2001) and *Applebaum v. Milwaukee Metro Sewage Dist.*, 340 F.3d 573, 579 (7th Cir. 2003), Parker offers three grounds why Brooks's reason for terminating Parker was pretextual: (1)

Brooks's reason for terminating her "cannot be the real reason"; (2) Brooks gave shifting reasons for terminating her; and (3) Brooks's stated reason for terminating her "was insufficient to warrant the action taken." (ECF No. 49 at 12–13.)  Parker's evidence of pretext, however, fails to indicate either that Brooks's proffered reason is not worthy of credence, or that no reasonable person could find it credible.

Parker's assertion that Brooks's reason for terminating her was not the "real reason" is inapt.  Parker argues that she did not receive any corrective action, that Williams did not follow the PTO policy in practice, that Parker did not alter her schedule several times while Williams was in Arizona, and that Parker did not allow a new trainee to work reception without a supervisor's approval.  However, even taking these assertions as true in contradiction to the evidence of record, none of these arguments or the circumstantial evidence Parker puts forth in support of them establish that Brooks did not honestly believe its reasons for terminating Parker. Indeed, the Court is not in the business of evaluating "whether the employer's proffered justification was accurate or even whether it was unfair.  [The Court's] sole focus is whether the employer's stated reasons can be characterized as a falsehood rather than an honestly held belief." *Robertson v. Dep't of Health Servs.*, 949 F.3d 371, 378 (7th Cir. 2020).  Similarly unavailing is Parker's assertion that Brooks's stated reason for terminating her was insufficient to warrant the action taken. Again, "a pretext analysis evaluates the honesty of the employer's explanation, not its validity or reasonableness." *Seymour-Reed v. Forest Pres. Dist. of DuPage Cnty.*, 752 F. App'x 331, 335 (7th Cir. 2018).

Parker comes closest to, but still misses the mark when she urges that Brooks gave shifting reasons for terminating her.  This is because "[o]ne can reasonably infer pretext from an employer's shifting or inconsistent explanations for the challenged employment decision." *Appelbaum v. Milwaukee Metro. Sewerage Dist.*, 340 F.3d 573, 579 (7th Cir. 2003).  Parker asserts that she was not initially given a reason for her termination but that on or about November 02, 2018, "Defendant's manager, Dave Brinkman," Human Resources, informed the Indiana Department of Workforce Development ("IDWFD") that Parker voluntarily quit to accept other employment. But it is undisputed that she was terminated.  Furthermore, Parker asserts that when Brooks submitted its EEOC position statement, it provided an inconsistent reason for her termination—that she had violated its PTO policy.  Brooks counters, however, that the information provided to the IDWFD was irrelevant because Brinkman was not involved in the decision to terminate Parker and did not consult with the actual decisionmakers before he responded to IDWFD.

The actual decisionmakers involved in Parker's termination have not given shifting reasons for terminating her.  "An inference of pretext may be permissible only when *decisionmakers* make false or inconsistent statements about the circumstances of a particular employment decision." *Krchnavy v. Limagrain Genetics Corp.*, 294 F.3d 871, 876–77 (7th Cir. 2002).  "A decisionmaker is the person responsible for the contested decision." *Davis v. Con-Way Transp. Cent. Express, Inc.*, 368 F.3d 776, 783 (7th Cir. 2004) (quoting *Venturelli v. ARC Cmty. Servs., Inc.*, 350 F.3d 592, 600 (7th Cir. 2003) (internal quotations omitted)).  Here, the record is clear

that the decisionmakers involved in Parker's termination were Williams, Bartee, and Kelley, and Parker does not point to any evidence to suggest that Brinkman, who worked far away in Brooks's corporate office in Chelmsford, Massachusetts, was a decisionmaker.  Instead, the decision to terminate Parker began when Williams recommended Parker's termination by email on October 10, 2018, after meeting with Parker.  Bartee supported the recommendation, and Kelley approved the termination.

Moreover, Williams's reason for terminating Parker has been consistent.  In her email to Bartee and Kelley, Williams stated that Parker had "altered her schedule multiple times without notifying [her,] . . . had changed her vacation time twice without prior approval [and] approved [the] temp in training to cover her time without speaking to [Williams]."  (ECF No. 47-14 at 2.)  Williams also relayed that Parker had not followed the PTO policy in the past and that she had discussed the issues with Parker "multiple times."  (*Id.*)  In Brooks's EEOC position statement, it stated that same rationale as the basis for terminating Parker.  (ECF No. 47-16 at 3–5; *see also* ECF No. 47-19 at 3 (stating the same reasons for terminating Parker in Brooks's Answer to Plaintiff's First Set of Interrogatories).)  And Parker has failed to point to any evidence in the record that suggest that a *decisionmaker* has provided any "false or inconsistent statements" about the reason for her termination.  *Krchnavy*, 294 F.3d at 876–77.

Parker has not provided evidence from which a "rational trier of fact could infer" that Brooks's stated reason for terminating her was a lie.  *Alexander v. Wis. Dep't of*

*Health & Family Servs.*, 263 F.3d 673, 682 (7th Cir. 2001). Thus, she has not shown that the reason for her termination was pretextual.

Therefore, Brooks's Motion for Summary Judgment is **granted** as to Counts II, III, and IV.

### C. Failure to Accommodate

Parker asserts that she brought a fifth claim for several failures to accommodate under the ADA. Brooks argues that Parker waived any failure to accommodate claim, and if she did not, it is entitled to summary judgment on any such claim because part of the claim is untimely and because Brooks reasonably accommodated Parker.

### 1. Parker's failure-to-accommodate claim fails.

Construed broadly, Parker alleges a failure-to-accommodate claim or claims based on incidents in July 2017, May 2018, and October 2018. Brooks argues that Parker waived her failure-to-accommodate claims by failing to file a statement of claims as required by the Court's case management plan. Finding no Seventh Circuit cases on point, the Court turns to cases from this District, which have not consistently found waiver based on the failure to file a statement of claims or defenses. *Compare Schambers v. Key Family of Cos.*, 1:16-cv-2406-WTL-DLP, 2018 WL 1794915, at *7 (S.D. Ind. Apr. 16, 2018) (finding plaintiff abandoned claims by not including it in their statement of claims), *McGann v. Trathen*, 1:16-cv-1235-JMS-DML, 2017 WL 5571289, at *12 (S.D. Ind. Nov. 20, 2017) (same), *and Tucker v. Express Scripts Holding*, 1:14-cv-1698-TWP-MJD, 2016 WL 2643737, at *8 (S.D. Ind. May 10, 2016) (same), *with Von Duprin LLC v. Moran Elec. Serv., Inc.*, No. 1:16-cv-1942-TWP-DML,

2019 WL 535752, at *8 (S.D. Ind. Feb. 11, 2019) (finding no waiver from failure to file statement of claims in absence of prejudice to opposing party), *and Williams v. Thorntons Inc.*, No. 2:17-cv-85-WTL-MJD (S.D. Ind. May 1, 2018) (ECF No. 75) (ultimately granting party's motion to file belated statement of claims rather than finding waiver).

The issue here is distinguishable from the above cases where the court found waiver.[1]  In *Schambers*, *McGann*, and *Tucker*, the Court found that the plaintiffs' claims were waived because they had filed a statement of claims without including the claims at issue.  Here, Parker failed to file a statement of claims altogether.  In *Von Duprin*, the plaintiff, like Parker in this case, did not file a statement of claims; however, the Court held that the defendant was not prejudiced because the plaintiff was merely trying to assert a claim from the amended complaint.  Here, however, Parker has not filed a statement of claims; nor is she trying to assert a claim from the Complaint; she is instead trying to assert a *new* claim that she argues was clearly alleged in her Complaint, despite it not being one of the four Counts she brings against Brooks.

On top of Parker not filing a statement of claims or bringing a count for failure to accommodate, the Court is not convinced that Brooks was given "fair notice" that Parker was asserting a failure-to-accommodate claim under the ADA.  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The Complaint alleges that Parker requested three accommodations for

---

[1] *Williams* dealt with affirmative defenses and is therefore not applicable here.

her disability and that she was denied at least one accommodation. (Compl. ¶¶ 8–10, 13, 14, ECF No. 1 at 2.) Furthermore, the Complaint alleges that Parker "was terminated in retaliation for requesting an accommodation." (*Id.* ¶ 20, ECF no. 1 at 2.) And in Count IV, the Complaint alleges that Brooks, "as a result of retaliating against [Parker] for requesting an accommodation, violated the [ADA] . . . ." (*Id.* ¶ 28, ECF No. 1 at 3.) On the face of the Complaint, then, any allegations regarding Parker's requested accommodations appear only to support her retaliation claim under the ADA (Count IV) rather than to assert a failure-to-accommodate claim. However, given that Parker failed to allege a failure-to-accommodate claim as a Count in her Complaint, failed to file a statement of claims as required by the case management plan, and failed to provide Brooks "fair notice" she was bringing a failure-to-accommodate claim under the ADA, the Court finds that Parker waived her failure-to-accommodate claim.

Even if Parker had not waived any failure-to-accommodate claim, though, any such claim still fails as a matter of law as will now be discussed.

2. <u>Parker's failure-to-accommodate claim for her July 2017 request is time-barred.</u>

To the extent Parker alleges a failure-to-accommodate claim relating to Brooks alleged failure to provide her a reasonable accommodation in July 2017, it is time barred and therefore fails as a matter of law. Claims for discrimination under the ADA must be filed within 300 days after the alleged unlawful employment practice occurred. *Stepney v. Naperville Sch. Dist. 203*, 392 F.3d 236, 239 (7th Cir. 2004); *see also* 42 U.S.C. § 12117(a). "Under the notice rule, the 300–day limitations period

commences 'at the time the [employment decision] was made and communicated to [the employee].'" *Stepney*, 392 F.3d at 240 (quoting *State Coll. v. Ricks*, 449 U.S. 250, 258 (1980)).

In July 2017, Parker requested to have a key to the front door. Tom Waites denied Parker's request on July 13, 2017. Parker acknowledged that her request was denied on July 14, 2017. (ECF No. 47-13 at 1 ("Oh yeah, I totally forgot about that entrance. . . . Thank you much[.]").) For Parker to have timely filed her EEOC charge, she would have had to file it by May 9, 2018 (300 days after July 14, 2017). However, Parker filed her EEOC charge on December 19, 2018. (ECF No. 47-17.) Thus, this claim at least is time barred.

3.  <u>Parker's remaining failure to accommodate claims fail as a matter of law.</u>

Any of her allegations of failure to accommodate lack at least one element necessary to make out a failure-to-accommodate claim in any event. In order to establish a claim for failure to accommodate under the ADA, a plaintiff must establish that: (1) she is a qualified individual with a disability; (2) the employer was aware of her disability; and (3) the employer failed to reasonably accommodate the disability. *Kotwica v. Rose Packing Co.*, 637 F.3d 744, 747–48 (7th Cir. 2011). It is undisputed here that elements (1) and (2) are satisfied. At issue, then, is whether Brooks failed to reasonably accommodate Parker's disability.

"Identifying reasonable accommodations for a disabled employee requires both employer and employee to engage in a flexible, interactive process." *Brown v. Milwaukee Bd. of Sch. Dirs.*, 855 F.3d 818, 821 (7th Cir. 2017) (citing *Stern v. St.*

*Anthony's Health Center*, 788 F.3d 276, 292 (7th Cir. 2015)).   "Both parties are responsible for that process. If a reasonable accommodation was available but the employer prevented its identification by failing to engage in the interactive process, that failure is actionable."   *Id.*   "On the other hand, if the employee 'does not provide sufficient information to the employer to determine the necessary accommodations, the employer cannot be held liable for failing to accommodate the disabled employee.'" *Id.* (quoting *Reeves ex rel. Reeves v. Jewel Food Stores, Inc.*, 759 F.3d 698, 702 (7th Cir. 2014)).

Parker requested accommodations on three separate occasions.   While the first occasion, namely July 2017, is time-barred, the Court without much further elaboration notes Parker fails here because her request for a *key* access to the front door was reasonably accommodated through the provision of access via a handicap ramp.   (*See* ECR 47-13.)   Turning to the second instance, on May 4, 2018, during a meeting with Williams and Bartee, Parker requested that she be given *badge* access to the front door and that Brooks construct an *additional* handicap ramp near the employee entrance to the building.   (*See* ECF No. 43-1 at 65.)   Williams testified that, during the meeting, Bartee told Parker that she could schedule a separate meeting with her to discuss Parker's requests.   (Williams Dep. ¶¶ 20:7–11, ECF No. 43-2 at 21.)   In a follow-up email to Parker after the meeting that day, Williams informed Parker that "she was able to confirm with facilities that a handicap ramp with a single door entry ha[d] been provided with handicap parking right outside the door." (ECF No. 43-1 at 65; *see also* Williams Dep. ¶¶ 20:11–18, ECF No. 43-2 at 21.)

Brooks argues that Parker caused the interactive process to break down by not accepting Bartee's invitation to further discuss Parker's requests after the meeting. Parker responds that she did not cause a break down in the interactive process because Brooks outright denied her requests during the May 4, 2018 meeting with Williams and Bartee. She points to no evidence to back her assertion.

Viewing the record in the light most favorable to Parker, the Court finds no evidence to suggest that Brooks outright denied Parker's requests during the May 4 meeting. As to the additional ramp request, Williams informed Parker *after the meeting* that there was already a handicap ramp that she could utilize—that Brooks had already provided her a reasonable accommodation. "A 'reasonable accommodation' is one that allows the disabled employee to 'perform the essential functions of the employment position.'" *Severson v. Heartland Woodcraft, Inc.*, 872 F.3d 476, 481 (7th Cir. 2017) (quoting 42 U.S.C. § 12111(8)). The Brooks facility in which Parker worked had three entrances: a front entrance, which contained a slight ramp; an employee entrance, which contained no ramp; and a back entrance, which contained a ramp. (Parker Dep. ¶¶ 41:25–42:15, ECF No. 43-1 at 41–42.) Parker testified that she sometime asked coworkers to let her in the front entrance, and she would then utilize the ramp at the front entrance to enter the building. (*Id.* at 41:9–12.) She also testified that was not able to use the back entrance ramp because it was "too far from [her] workstation" and that she was "in too much pain to get [her] scooter and get [her] walker and go from the back of the building way [sic] to the front." (*Id.* at 40:5–7.) As to the request for a badge to the front door, Parker testified

27

that she wanted the key because the front door was near her desk and she could get to her workstation "as quick as possible." (Parker Dep. ¶¶ 5 –8, ECF No. 43-1 at 29.)

The Court finds that Brooks provided Parker a reasonable accommodation. Brooks provided Parker with a ramp to enter the building and a handicap parking space near that ramp. She even had the option to use the small ramp near the front entrance if she was able to be let into the building by coworkers. Parker has also failed to point to any evidence in the record to show that she did continue to engage in the interactive process as to the badge request, as invited. Parker did not follow up with Bartee after Bartee suggested that she and Parker meet separately to further discuss that request. Neither did she respond to the email from Williams detailing the accommodation. Moreover, Parker admitted that there was *never* a time in which she was physically unable to get into the facility to be able to perform her job. (Parker Dep. ¶¶ 1–4, ECF No. 43-1 at 33.) The fact that Parker preferred to have badge access to the front door or preferred to enter the building through the employee entrance, which would require new construction of a third ramp, is irrelevant. Parker's failure to accommodate claim fails because Parker already had a reasonable accommodation, even if it was not the accommodation she preferred. *See, e.g., Gratzl v. Off. of Chief Judges of 12th, 18th, 19th, & 22nd Jud. Cirs.*, 601 F.3d 674, 681–82 (7th Cir. 2010).

As for the third instance, on October 8, 2018, Parker requested to leave her shifts early on October 8 and 9 to attend dry-needling appointments to alleviate her pain. Putting aside whether Brooks even had some legal obligation to accommodate those appointments, the Court finds that Brooks did not fail to accommodate Parker as to

28

this request; rather, Brooks in fact granted the request.  (*See* Parker Dep. ¶ 68:1, ECF No. 43-1 at 52 (admitting Williams "approved it").)

Therefore, assuming *arguendo* that Parker did not waive her failure-to-accommodate claim, or that some aspect of it was not time-barred, Parker's failure-to-accommodate claim fails as a matter of law because Brooks provided reasonable accommodations.

## IV.    Conclusion

For the above reasons, Brooks's Motion for Summary Judgment (ECF No. 42) is **granted**.  Judgment will issue under separate order.

**SO ORDERED.**

Date: 7/26/2021

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Amber K. Boyd
AMBER K. BOYD ATTORNEY AT LAW
amber@amberboydlaw.com

Sarah Elizabeth Larimer
AMBER BOYD LAW
sarah@amberboydlaw.com

Brian Lee Mosby
LITTLER MENDELSON, P.C.
bmosby@littler.com